IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**ARKANSAS HOME-BASED**
**SERVICES ASSOCIATION, INC.**                                                          **PLAINTIFF**

V.                                      CASE NO. 5:23-CV-5206

**PINNACLE IN HOME CARE, LLC;**
**VICTORIA WILLIAMS; and**
**LAWRENCE WILLIAMS**                                                                   **DEFENDANTS**

## OPINION AND ORDER

Now before the Court are Defendants Pinnacle In Home Care, LLC, Victoria Williams, and Lawrence Williams's Motion to Dismiss (Doc. 10) and Plaintiff Arkansas Home-Based Services Association, Inc.'s Motion to Amend Complaint (Doc. 29). Both motions are fully briefed and ripe for review. For the reasons stated herein, the Motion to Dismiss is **GRANTED** and the Motion to Amend is **DENIED**.

Arkansas Home-Based Services Association ("AHB") is an Arkansas association that is comprised of member businesses that provide home-based care to aging and disabled persons. (Doc. 2, ¶ 2). Pinnacle is a separate home-based care provider in Arkansas that competes with AHB's members. *Id.* at ¶ 11. Pinnacle is owned by Victoria and Lawrence Williams, both of whom are Arkansas residents.[1] *Id.* at ¶¶ 12–13.

AHB brings this suit against Pinnacle alleging, in short, that Pinnacle misclassifies its employees as independent contractors in violation of the Arkansas Minimum Wage Act and the Fair Labor Standards Act ("FLSA"), creating an unfairly competitive market for AHB's members. AHB alleges that, through this misclassification, Pinnacle "falsely

---

[1] The Court will collectively refer to the three defendants as "Pinnacle."

1

augment[s] take-home pay given the absence of mandatory payroll withholdings," which allegedly requires AHB's members to pay higher wages to compete with Pinnacle. *Id.* at ¶ 68. Additionally, AHB alleges that Pinnacle's misclassification allows it to evade paying certain taxes and benefits, so it can charge its clients less and dominate a disproportionate share of the home-based-services market as compared to law-abiding companies. *Id.* at ¶ 65.

AHB brings claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; the Arkansas Unfair Practices Act ("AUPA"), Arkansas Code § 4-75-201 *et seq.*; the tort of unfair competition; and the Arkansas Declaratory Judgment Act ("ADJA"), Arkansas Code § 16-111-101 *et seq.* AHB seeks a declaratory judgment "establishing that AMWA and FLSA require Pinnacle to classify and pay its care professionals as employees who are entitled to minimum wage and overtime." (Doc. 2, ¶ 180). The Complaint also requests preliminary and permanent injunctions to the same effect, as well as monetary damages. *See id.* at ¶ 113 (claiming entitlement to relief under 18 U.S.C. § 1964(c) which provides treble damages for RICO violations). Pinnacle moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing, or in the alternative, under Rule 12(b)(6) for failure to state a claim.

Ultimately, the Court finds that AHB fails to sufficiently plead Article III standing. Further, even if there were constitutional standing, AHB lacks statutory standing to bring a RICO claim, in which case the Court would decline to exercise supplementary jurisdiction over the remaining state law claims. Lastly, regarding the Motion for Leave to Amend, AHB's proposed amended complaint would not withstand dismissal under Rule 12 and is, therefore, futile.

## I. MOTION TO DISMISS (DOC. 10)

### A. Constitutional Standing Under Article III

To survive a motion to dismiss under Rule 12(b)(1) for lack of standing, a plaintiff "must allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that [it] satisfies the elements of Article III standing." *See Hawse v. Page*, 7 F.4th 685, 688–89 (8th Cir. 2021) (citations omitted). That is, a plaintiff must allege facts demonstrating: (1) it has "suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). In addition to being actual or imminent, an injury in fact must be concrete and particularized, meaning the injury is not abstract or merely a "generalized grievance." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) and *Lujan*, 504 U.S. at 560). "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion*, 594 U.S. at 427 (quotation marks and citation omitted).

An association may bring a claim based on its own standing or on behalf of its members—i.e., "associational" or "representational" standing—provided certain additional requisites are met. AHB makes explicit "the only claim for which [it] asserts representational standing is its RICO claim." (Doc. 20, p. 24 n.3). Accordingly, the Court

3

will analyze AHB's standing to bring the AUPA, tort, and ADJA claims on its own behalf, then it will turn to AHB's associational standing to bring the RICO claim.

### A. AHB's Standing to Bring AUPA, Tort, and ADJA Claims

AHB lacks standing to bring these claims on its own behalf because it fails to allege any injury in fact that the association *itself* has suffered. For both its AUPA and ADJA claims, AHB relies heavily on the argument that the Arkansas legislature has provided it a right of action. (Doc. 20, pp. 15–16). Even granting that to be true, it is insufficient to overcome AHB's failure to plead injury in fact, which is "a hard floor of Article III jurisdiction that cannot be removed by statute." *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009); *Spokeo*, 578 U.S. at 341; *see also Lujan*, 504 U.S. at 580–81 (Kennedy, J., concurring in part and concurring in judgment). The legislature's "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . . ." *TransUnion*, 594 U.S. at 426. Therefore, this fails to support standing.

Although AHB argues in its brief that it has been harmed by Pinnacle's actions, the Complaint makes no factual allegation to this effect. (Doc. 20, pp. 15–16). Rather, AHB makes only conclusory allegations that Pinnacle's actions injured AHB's members and competition more broadly. *See, e.g.*, Doc. 2, ¶¶ 156, 157, 162, 163. The same is true for AHB's tort claim, which makes no allegation as to how AHB has suffered harm. *See* Doc. 2, p. 39. For its ADJA claim, AHB argues that its interests are adverse to Pinnacle because AHB has "a legal interest in the determination of whether Pinnacle is unfairly competing

in the same market as its members." (Doc. 20, p. 17). But again, the Complaint alleges no facts as to how AHB has been injured. *See* Doc. 2, ¶¶ 175–81.

As Pinnacle notes in its Reply, if such claims were allowed to proceed,

> every Arkansas business will be empowered to identify laws its rivals may be breaking and sue them in federal court because their alleged lack of compliance isn't "fair." If a retailer believes its competitor is violating OSHA, bring an unfair practices claim; if a poultry supplier thinks its competitors aren't complying with USDA regulations, bring an unfair practices claim. Competitors would be permitted to bring suits, obtain discovery, and receive money damages from their rivals on the sole basis that the competitor is "harmed" if it follows the law and its rival doesn't. There's no authority supporting such an unwarranted expansion of Arkansas law, and the Association cites none in its brief.

(Doc. 23, p. 6). Because AHB fails to allege any facts that it suffered a concrete injury in fact, it fails to establish Article III standing as to its state law claims.

## B. AHB's Associational Standing to Bring Civil RICO Claim

"The Article III judicial power exists only to redress or otherwise to protect against injury to the complaining party." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). However, an association may bring suit on behalf of its members provided certain requirements are met. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Wash. St. Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). First, the association's members must "otherwise have standing to sue in their own right"; second, "the interests at stake [must be] germane to the [association's] purpose"; and, third, "the claims asserted [and] the relief requested [must not] require the participation of individual members in the lawsuit."[2] *See id.* (citing *Hunt*, 432 U.S. at 333). AHB contends

---

[2] Many courts have found the third prong of the associational standing test to be prudential. *See Housatonic River Initiative v. United States Env't Prot. Agency, New England Region*, 75 F.4th 248, 265 (1st Cir. 2023) ("The first two prongs of this test have

that it has associational standing to bring its RICO claim on behalf of its members. The Court disagrees.

While the Court is dubious as to whether AHB adequately pled injury in fact on its RICO claim,[3] its primary concerns here are with causation and redressability. As Pinnacle put it, "while the Complaint devotes pages to the statutory and regulatory regimes Pinnacle is allegedly violating, there is no allegation as to how Pinnacle's alleged conduct caused loss or harm to [AHB's] members." (Doc. 11, p. 18 (citing Doc. 2, pp. 6–15)). In other words, though AHB presents quite a bit of information regarding how misclassification *can* harm competitors in a general sense, it fails to plead causation *in this case* beyond mere theory or speculation. To the extent AHB makes allegations of causation, they are wholly conclusory and do not allege any facts that link the alleged misclassification by Pinnacle to the alleged harm to AHB's members, other than saying "A caused B." *See, e.g.*, Doc. 2, ¶ 109 ("As a direct, intended, and foreseeable result of the Defendant's violations of RICO, . . . the Association has suffered damages."); *id.* at ¶ 110 ("The criminal acts of mail fraud and wire fraud committed by Defendants were

---

constitutional dimensions; the third prong is prudential.") (citing *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 554–58 (1996)).

[3] The bulk of the injuries alleged in the nearly forty-four-page Complaint are general and abstract. *See, e.g.*, Doc. 2, p. 9; *id.* at ¶¶ 64, 153, 156. *But see id.* at ¶ 68 (alleging AHB's members "have had to compete in the labor market for caregiver staff by paying higher wages to compete against Pinnacle's practice of misclassification, which has the effect of falsely augmenting take-home pay given the absence of mandatory payroll withholdings."); *id.* at ¶ 65 ("Pinnacle's prices take market share from law abiding home care service businesses and also constrain the Association's members' ability to increase the prices charged as costs increase, including for such things as wages, benefits, and other expenses," which "injures the Association's members by reducing revenues as well as profit margins.").

directly related to and were substantial factors in causing injury to the Association and its members."). Where a court is required to make "[s]peculative inferences . . . to connect the[ ] injury to the challenged actions," there can be no Article III standing. *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976).

Without sufficient facts connecting Pinnacle's actions to AHB's members' harm, it is similarly unclear how the relief sought would redress any injury. But there is an even greater concern as to redressability. At bottom, AHB is asking the Court to enjoin Pinnacle from committing the alleged FLSA violation, but the Court is unable to grant such relief to AHB. Courts widely agree that injunctive relief for FLSA violations lies solely with the Secretary of Labor. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 750 F.2d 47, 51 (8th Cir. 1984) (holding that "only the Secretary is vested with the authority to seek an injunction" under the FLSA); *United Food & Com. Workers Union, Loc. 1564 of N.M. v. Albertson's, Inc.*, 207 F.3d 1193, 1197–98 (10th Cir. 2000) (refusing a union's ability to seek injunctive relief under the FLSA on behalf of its members); *Powell v. Florida*, 132 F.3d 677, 678 (11th Cir. 1998) (collecting cases); *see also* 29 U.S.C. §§ 204(a), 211(a), 217. AHB is similarly precluded from seeking monetary damages for the FLSA violation, which are available only to employees. *See* 29 U.S.C. § 216(b). The Court does not see— and AHB does not suitably explain—why it should be afforded relief for an FLSA violation in direct contravention of the statutory language and precedent. Thus, even if the Court were to find injury and causation, it would be unable to redress the harm; AHB therefore cannot establish that its members meet Article III standing requirements. *See Shulman*

7

*v. Kaplan*, 58 F.4th 404, 409 (9th Cir. 2023) ("[I]f the court is unable to grant the relief that relates to the harm, the plaintiff lacks standing." (citation omitted)).

In its brief in opposition, AHB rests redressability for the alleged RICO harm on monetary damages, stating "[t]he damages awarded by RICO will remedy the harm done to the Association's members." (Doc. 20, p. 23). Section 1964(c) provides for treble damages to compensate injury to a plaintiff's business or property by reason of a RICO violation. As to the final prong of associational standing, such an award "would clearly require individualized proof necessitating the individual participation of the Association members." *See Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 772 F.2d 467, 471 (8th Cir. 1985) (citing *Hunt*, 432 U.S. at 344). In fact, the Eighth Circuit has explained that courts have "traditionally denied" associational standing under a materially similar remedial provision for treble damages based on injury to one's business or property, 15 U.S.C. § 15, because such damage awards require "precise knowledge of the extent of the . . . injury to each plaintiff." *Associated Gen. Contractors of N. Dakota v. Otter Tail Power Co.*, 611 F.2d 684, 689, 690 (8th Cir. 1979) (citations omitted).

Because AHB fails to allege its members' Article III standing and because individualized participation will be required to establish damages, the Court finds that AHB does not have associational standing to pursue its claim. Assuming, however, that AHB had established Article III standing, its RICO claim would still fail for want of statutory standing, depriving this Court of its federal question jurisdiction.

### B.  Statutory Standing Under RICO

Separate and apart from Article III standing, a party seeking relief under RICO must have statutory standing, which is evaluated under Rule 12(b)(6). RICO provides a private

8

right of action to "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). AHB brings its RICO claim pursuant to § 1962(c), which proscribes participation in the conduct of an enterprise engaged in interstate commerce through a pattern of racketeering activity.[4] *See* 18 U.S.C. § 1962(c).

The Supreme Court has clarified that, under RICO, a plaintiff "only has [statutory] standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Specifically, for a litigant to have standing to bring a § 1962(c) claim, the injury to the litigant's business or property must flow from a § 1961(1) *predicate act*, not some other conduct by the defendant. *Bowman v. W. Auto Supply Co.*, 985 F.2d 383, 385–86 (8th Cir. 1993) (citing, *inter alia*, *Sedima*, 473 U.S. at 496–97). Further, there must be "some direct relation between the injury asserted and the injurious conduct alleged," mere "but for" causation is insufficient. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 952 (8th Cir. 1999) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 50 U.S. 258, 268 (1992)). Thus, "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

Pinnacle points to the Supreme Court's decision in *Anza* as dispositive here, and this Court agrees. In *Anza*, the plaintiff asserted that the defendants had "adopted a

---

[4] The Complaint also references a violation under § 1962(d), which prohibits conspiring to violate § 1962(a)–(c). *See* Doc. 2, ¶¶ 73–74. Such an allegation would fail for the same reasons as the § 1962(c) claim. *See Bowman v. W. Auto Supply Co.*, 985 F.2d 383, 388 (8th Cir. 1993) ("We hold that standing to bring a civil suit . . . based on an underlying conspiracy violation of 18 U.S.C. § 1962(d) is limited to those individuals who have been harmed by a § 1961(1) RICO predicate act committed in furtherance of a conspiracy to violate RICO.").

9

practice of failing to charge the requisite [state] sales tax to cash-paying customers," allowing their business "to reduce its prices without affecting its profit margin." *Id.* at 454. The plaintiff further contended the defendants did this for the purpose of achieving a "competitive advantage" by "gaining sales and market share at [the plaintiff's] expense." *Id.* at 454–55 (cleaned up). The plaintiff there alleged that the defendants' submission of the fraudulent tax returns constituted the predicate acts of mail and wire fraud. *Id.* at 454. The Supreme Court rejected the plaintiff's theory, concluding that "[t]he cause of [the plaintiff's] asserted harms" was "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* at 458. While the Court noted that the plaintiff certainly asserted that it "suffered its own harms when the [defendants] failed to charge customers for the applicable sales tax," the *State* was "[t]he direct victim" of the RICO violation because "[i]t was the State that was being defrauded and the State that lost tax revenue as a result." *Id.* at 458. "A RICO plaintiff," the Court stated, "cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." *Id.* at 460.

Like *Anza*, AHB pleads mail and wire fraud as the predicate acts. *See* 18 U.S.C. § 1961(1). In so pleading, AHB alleges that Pinnacle knowingly used mail and wire communications with the intent of furthering a scheme meant to defraud tax authorities, Pinnacle's care providers, government payors, and Pinnacle's worker's compensation insurance companies, "all in an illegal and anticompetitive manner that caused damage to the Association and its members." (Doc. 2, ¶¶ 77–83, 88–96).[5] AHB's complaint makes

---

[5] The allegations of fraud are also conclusory and not pled with sufficient particularity under Rule 9(b).

10

only conclusory allegations as to the harm incurred by the Association and its members as a result of the predicate acts.[6]

Here, there is a gap between the harm to AHB's members and the alleged predicate offenses that AHB fails to bridge. "The cause of [AHB's] asserted harms . . . is a set of actions (offering lower prices [and inflating wages]) entirely distinct from the alleged RICO violation (defrauding the State [and other third parties])." *Anza*, 547 U.S. at 458; *see* Doc. 2, ¶¶ 65, 68. And while AHB has alleged that it suffered some harm from Pinnacle's actions, the "direct victim[s]" of the alleged mail and wire fraud would be those that were in fact defrauded—not AHB. *Anza*, 547 U.S. at 458. If "the central question" is whether the mail and wire fraud "led directly to" AHB's injuries, the answer here must be no, as AHB has failed to plausibly plead proximate causation. *See id.* at 460; *see also DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 525 (E.D.N.Y. 2011) (holding the alleged RICO violations were "not the proximate cause of the ultimate harm to plaintiffs, which instead originates in defendants' underlying" FLSA violation allegations). Without statutory standing, AHB's RICO claim cannot stand.

\* \* \*

The Court's finding that AHB lacks associational standing to bring its claims is sufficient to require dismissal under Rule 12(b)(1). And alternatively, even if there were Article III standing, AHB would lack statutory standing to bring its RICO claim, depriving

---

[6] *See* Doc. 2, ¶ 97 (stating Defendants' predicate acts "have damaged the Association and its members"); *id.* at ¶ 102 ("Defendants' criminal actions described herein are the direct and proximate cause of the Association's damaged as alleged herein."); *see also id.* at ¶¶ 109, 110.

11

AHB of its jurisdictional hook, and this Court would decline to exercise supplementary jurisdiction over the remaining state claims. *See* 28 U.S.C. § 1367(c)(3).

## II.  MOTION TO AMEND COMPLAINT (DOC. 29)

While a district court has discretion whether to grant leave to amend, a court must freely grant such leave "[i]n the absence of any apparent or declared reason—such as . . . futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12[ ] . . . .'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)).

As an initial matter, the proposed amendment does not remedy the deficiencies with AHB's Article III standing as to the claims made in its original Complaint. So, those claims would still be properly dismissed if the Motion were granted. However, due to the addition of new plaintiffs and new claims, AHB's Motion warrants further analysis. AHB proposes adding one of Pinnacle's former care providers, Denisse Salinas, as a plaintiff. AHB seeks to join Ms. Salinas to the RICO claim and to add FLSA claims on behalf of Ms. Salinas and a putative collective. Additionally, AHB adds three claims under the Clayton and Sherman Acts.[7] The Court takes up the RICO (Count I), antitrust (Counts IV–VI) and FLSA claims (Counts VII and VIII) in turn.[8]

---

[7] The proposed amended complaint uses indefinite references to "Plaintiff" and "Plaintiffs" throughout, making it unclear whether it refers to AHB, AHB's members (who are not plaintiffs, but are sometimes included in "Plaintiffs"), Ms. Salinas, the putative collective, or all of the above. The Court has done its best to use context to decipher who brings what claims, giving the benefit of the doubt to AHB, Ms. Salinas, and the putative collective.

[8] The proposed amendment also removed the ADJA claim.

12

### A. Addition of Ms. Salinas to AHB's RICO Claim

The addition of Ms. Salinas to the RICO claim makes no material difference because the proposed amendment fails to plausibly allege that a RICO violation proximately caused any injury to her or the putative collective. *See, e.g.*, Doc. 29-1, ¶¶ 128, 138 (alleging only that Pinnacle's scheme to defraud and deceive employees like Ms. Salinas "caused damage" to Ms. Salinas, AHB, and its members); *see also Bowman*, 985 F.2d at 385–86 (citing, *inter alia*, *Sedima*, 473 U.S. at 496–97).[9] The Court finds the Eastern District of New York's reasoning in *De Silva* persuasive and directly on point here:

> [T]he "original" injury forming the basis of plaintiffs' RICO cause of action is, simply, the retention of plaintiffs' wages. With this background in mind, it is clear that the predicate acts alleged by plaintiffs (*i.e.*, mail fraud) did no more than "further, facilitate, permit, or conceal" plaintiffs' "original" injury, and were not the acts from which this injury directly flowed. . . .
>
> Stated otherwise, defendants' misrepresentations and omissions regarding their failure to fully compensate plaintiffs is not the proximate cause of the ultimate harm to plaintiffs, which instead originates in defendants' underlying failure to properly pay for all hours worked.

770 F. Supp. 2d at 524–25. So too here, the alleged harm to the care providers is the misclassification and failure to pay wages when due, which is directly tied to the FLSA violation, not the predicate acts. *See, e.g.*, Doc. 29-1, ¶¶ 130 ("Defendants devised or intended to devise a scheme or artifice meant to defraud their employees *by not paying*

---

[9] The proposed amendment is internally inconsistent as to the effect of the misclassification. Although it alleges that Pinnacle's actions damage its care providers "by causing an *artificial deflationary* effect on their wages," it almost immediately reverses course to state that Pinnacle's misclassification "*falsely augment[s]* take-home pay," causing AHB's members to raise wages in order to compete. *See* Doc. 29-1, ¶¶ 160, 162. Additionally, it alleges Pinnacle "actively conspires with its employees" to perpetuate the misclassification. *See id.* at ¶ 213. As pled, the Court cannot square these allegations with any plausible injury to Ms. Salinas or the collective, i.e., former care providers.

13

*them their proper wages when due.*" (emphasis added)).[10] Therefore, the proposed amendment fails to allege statutory standing as to Ms. Salinas and the putative collective.

### B. Addition of Antitrust Causes of Action

AHB seeks to add three counts (Counts IV–VI) for monetary and injunctive relief against Pinnacle for alleged antitrust violations, asserting that Pinnacle's use of a restrictive covenant in its care-provider application violates sections 1 and 2 of the Sherman Act. 15 U.S.C. §§ 1, 2; *see also* 15 U.S.C. §§ 15, 26. Pinnacle, allegedly, requires all care-provider applicants to sign an agreement "not to do business directly with any individual or business entity that Pinnacle In-Home Care has introduced to [them] or by entering into employment or contract with such individuals or businesses." Doc. 2-11, p. 4; *see* Doc. 29-1, ¶¶ 247–48. AHB asserts that this covenant indefinitely bars

---

[10] Further, the proposed amendment appears to seek the same relief for both the alleged FLSA and RICO violations, i.e., treble recovery for the injury caused by the misclassification, which may preempt relief under RICO. *See* Doc. 29-1, ¶ 1 (treble backpay); *id.* at ¶ 183 (treble damages pursuant to § 1964(c)). Recently, the Sixth Circuit held:

> [T]he FLSA preclude[s] RICO claims to the extent that the damages sought are for unpaid minimum or overtime wages. However, when a RICO claim that is based on a dispute between an employer and an employee alleges damages that are distinct from unpaid wages, even if the RICO-predicate act arises from conduct that also violates the FLSA, then the RICO remedies do not fall within the ambit of the FLSA's remedial scheme and are therefore not precluded.

*Torres v. Vitale*, 954 F.3d 866, 875 (6th Cir. 2020). While recognizing potentially contrary decisions from other courts within the Eighth Circuit and this district—which the Sixth Circuit also acknowledged—this Court believes the recent and thoroughly reasoned decision in *Torres* is persuasive and instructive here. *But see Montize v. Pittman Props. Ltd. P'ship No. 1*, 719 F. Supp. 2d 1052, 1055 (W.D. Ark. 2010) (concluding that "the FLSA does not provide an exclusive remedy for violations of its provisions" and collecting cases).

Pinnacle care providers from working with any other home-based care organization or engaging in any competitive activities with Pinnacle.[11] (Doc. 29-1, ¶ 153). In support of AHB's interpretation of the covenant, AHB refers to a declaration from Pinnacle's former Human Resources Coordinator, which states: "Caregivers at Pinnacle, pursuant to Pinnacle's job application form, are prohibited from competing with a different agency." (Doc. 2-10, ¶ 17).[12]

To have constitutional standing to bring these claims, AHB must either have standing in its own right—which it does not—or it must establish associational standing. As already discussed, associational standing requires that: (a) AHB's members otherwise have Article III standing to sue on their own behalf; (b) the interests AHB seeks to protect

---

[11] As somewhat of an aside, it is unclear how this covenant would capture AHB's members, as there are no facts alleged that Pinnacle ever introduced any of its care providers to its competitors, let alone to AHB's members. Rather on its face, the covenant appears to prevent Pinnacle's care providers from working with *clients* that the care provider met through their work with Pinnacle.

[12] Confusingly, the antitrust claims refer to "Plaintiffs" (plural), suggesting these claims are brought not only by AHB but also by Ms. Salinas. The Court cannot make sense of how Pinnacle's former care provider would have standing to bring an antitrust claim. Not only are former care providers, like Ms. Salinas, not competitors with Pinnacle, the proposed amendment alleges that it was the care providers who acted in concert with Pinnacle by entering into the restrictive covenants. *See e.g.*, Doc. 29-1, ¶ 253 ("Contracts, combinations, and/or conspiracies *between each of the independent contractors and Defendants* are per se violations of Section 1 of the Sherman Act" (emphasis added)); *see also id.* at ¶¶ 247, 256, 257 (similar). In light of this—and the fact that AHB does not compete with Pinnacle—the Court reads the antitrust claims to be brought by AHB *on behalf of its members* (i.e., Pinnacle's competitors).

Lastly, though the Court does not address the merits of the antitrust claims, it observes that it is highly unlikely that AHB adequately alleged "concerted action" because there is no allegation or reasonable inference that the employees/independent contractors who signed the restrictive covenant "*knowingly* participated in an arrangement *with an intent to suppress* [AHB's members] as a competitor." *Impro Prods., Inc. v. Herrick*, 715 F.2d 1267, 1276 (8th Cir. 1983) (citation omitted).

15

are germane to its purpose; and (c) the claims made and relief requested do not require individual participation by AHB's members. AHB fails to chin the bar on (a) and (c).

Beyond mere conclusory allegations, AHB does not plead any facts to establish that its members have suffered the requisite injury in fact caused by Pinnacle's conduct and redressable by this Court. *See* Doc. 29-1, ¶ 249 ("These exclusive dealings agreements [sic] have detrimentally impacted the ability of competitors—including Plaintiffs—to fully compete in the Arkansas market for home-based care services . . . ."); *id.* at ¶ 252 (alleging that "Plaintiffs have received lower total earnings than they would otherwise have received in the absence of Defendants' unlawful conduct" but failing to even minimally explain how AHB or its members have suffered reduced earnings due to the restrictive covenant); *id.* at ¶ 262 (". . . Plaintiffs have been injured by Defendants in an amount to be determined at trial, and [ ] Plaintiffs have suffered and are threatened with continued loss or damage to its business and property."); *id.* at ¶ 268 (similar). Though AHB points to the statute itself as conferring standing, (Doc. 29-1, p. 5, ¶¶ 13–14), this is insufficient to establish Article III standing. *TransUnion*, 594 U.S. at 426. Accordingly, AHB does not plausibly plead that its members have Article III standing to sue on their antitrust claims for either injunctive or monetary relief.

Lastly, as with RICO, AHB's claims for monetary relief under 15 U.S.C. § 15(a) will require the individual participation of its members. *See* Doc. 29-1, ¶ 258 (seeking treble damages). The Eighth Circuit has previously rejected associational standing to recover treble damages under § 15, reasoning that "proof and allocation of [such] damages require the full and personal participation of all claimants" due to "the difficulties inherent in determining the damages of indirectly harmed plaintiffs and the possibility of duplicative

and ruinous recoveries." *Otter Tail Power*, 611 F.2d at 689, 690 (citing *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263–64 (1972) and *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 130 (9th Cir. 1973)). Because individual participation will be necessary, AHB lacks associational standing to seek monetary relief under 15 U.S.C. § 15(a). *Otter Tail Power*, 611 F.2d at 689, 690; *see also Terre Du Lac*, 772 F.2d at 471.

### C. Addition of FLSA Claims

In an attempt to remedy the initial Complaint's deficiencies, the proposed amendment seeks to add an individual FLSA claim by Ms. Salinas (Count VII) and an FLSA collective action (Count VIII). The Court agrees with Pinnacle that it would be most appropriate for Ms. Salinas to refile her FLSA claims in a separate lawsuit, rather than permitting AHB to amend to add a new plaintiff and new claims now that all of AHB's claims have been dismissed.[13]

\* \* \*

---

[13] To the extent any of AHB's claims were to survive, this Court believes Rule 20 joinder of Ms. Salinas would be inappropriate. A court may "deny joinder" even if the plaintiff satisfies the Rule 20(a)(1) requisites, "if it determines that the addition of the party under Rule 20 will not foster the objective of the rule, but will result in prejudice, expense or delay." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1652 (3d ed. 2001); *see also In re EMC Corp.*, 677 F.3d 1351, 1360 (Fed. Cir. 2012) (citation omitted); *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974).

AHB may view Ms. Salinas's participation as an FLSA plaintiff as a foothold for its Frankenstein-like anticompetitive claims. However, hitching Ms. Salinas's FLSA claims to AHB's wagon would unnecessarily complicate her claim. This is exemplified by the fact that the amended complaint frames Pinnacle's care providers—the very people seeking FLSA relief—as co-conspirators in the AUPA claim. *See* Doc. 29-1, ¶ 213. Joinder would also likely confound discovery, pretrial matters, and resolution of this matter for Pinnacle. The parties' interests, not to mention judicial efficiency, would be best protected by denying leave to amend and directing Ms. Salinas to refile her FLSA claims via a separate lawsuit.

In sum, the Court finds that the proposed amendment does not remedy the original deficiencies, plead statutory standing for Ms. Salinas's RICO claim, or adequately plead Article III standing for the antitrust claims. Amendment is therefore futile, and to the extent Ms. Salinas wishes to maintain her separate FLSA claims, she is directed to refile a separate suit.

### III. CONCLUSION

Therefore, **IT IS ORDERED** that the Motion to Dismiss (Doc. 10) is **GRANTED**, and AHB's Complaint (Doc. 2) is **DISMISSED WITHOUT PREJUDICE**. **IT IS FURTHER ORDERED** that the Motion to Amend Complaint (Doc. 29) is **DENIED**.

**IT IS SO ORDERED** on this 30th day of September, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE